UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| K. PAUL HAINSWORTH | : | |
| Plaintiff, | : | |
| | : | |
| V. | : | CIVIL ACTION NO. |
| | | 302 CV 715 (EBB) |
| NATIONAL RAILROAD PASSENGER | : | |
| CORPORATION (AMTRAK), | : | |
| Defendant, | : | May 3, 2004 |

**JOINT TRIAL MEMORANDUM**

The parties in this matter respectfully submit this Trial Memorandum in accordance with the Court's Standing Order.

**1.    TRIAL COUNSEL**

Plaintiff's trial counsel will be Robert I. Reardon, Jr. and Jennifer L. Booker, of The Reardon Law Firm, P.C., 160 Hempstead Street, P.O. Drawer 1430, New London, CT 06320, phone (860) 442-0444.  Defendant's trial counsel will be Brian Molinari, Landman Corsi Ballaine & Ford, P.C., Offices of Amtrak, 50 Union Avenue, 4th Floor West, New Haven, CT,  120 Broadway, 27th Floor, New York, NY 10271, phone (212)238-4800.

**2.    JURISDICTION**

Jurisdiction is conferred upon this Court in that it is founded upon Title 28, United States Code, Section 1331.  Amtrak was created by Act of Congress, 49 U.S.C. Section 24101, et seq.  Suits involving federally chartered corporations are within the federal question jurisdiction provided that the United States is the owner of more than one half of their capital.  The federal government owns more than one-half of the respective capital stock of Amtrak.   The plaintiff was a citizen of the State of Connecticut at the time of commencement and is presently a citizen of the State of Connecticut.

**3.    JURY CASE**

This case will be tried to a jury.

**4.    NATURE OF THE CASE**

This case arises out of a train accident that occurred on January 17, 2001, in Branford,

Connecticut. The plaintiff was a passenger on a Shore Line East Commuter Railroad train, operated by the National Railroad Passenger Corporation (hereinafter "Amtrak").

## 5. STIPULATIONS OF FACTS AND LAW

1.      The plaintiff was employed by Accenture, LLP at the time of the accident.

2.      On January 17, 2001, at approximately 8:20 a.m., the plaintiff was a passenger on a Shore Line East Commuter Railroad train operated by Amtrak.

3.      Plaintiff admits that he did not incur any lost wages, commissions, benefits, salary or other earnings as the result of the incident that is the subject of this lawsuit. The plaintiff also admits that his present and future earning capacity is not impaired or diminished as the result of the incident that is the subject of this lawsuit. (*See* Plaintiff's Response to Request for Admissions dated October 3, 2003).

## 6. PLAINTIFF'S CONTENTIONS

This case arises out of the defendant's negligence, which the plaintiff intends to prove caused the train accident on January 17, 2001. On that day, defendant Amtrak was the operator of the train in which the plaintiff, K. Paul Hainsworth, was a passenger. Due to the defendant's negligence, the train collided with a large rock and derailed.

The significant issues in the case are the liability of Amtrak, severity of the physical and psychological injuries to the plaintiff and the damages to be awarded. The plaintiff, after being removed from the train, was transported by ambulance to Yale-New Haven Hospital, where examination revealed he had a lumbar strain.
On January 24, 2001, presented to Dr. Michael Halperin, of the Norwich Orthopedic Group, for an evaluation. Mr. Hainsworth had complaints of pain in his lower back which radiated out across his belt line. He also complained of diffuse numbness and tingling affecting his upper and lower extremities. Examination revealed a band of ecchymosis over the plaintiff's right side of the lower back with tenderness directly over the ecchymotic area. Dr. Halperin also noted hypesthesia in both upper extremities. It was Dr. Halperin's impression that the plaintiff suffered cervical and lumbar sprains.

On February 16, 2001, the plaintiff presented to Dr. Stephen Tobin of the Essex Medical Group with a chief complaint of back pain with numbness in his feet and hands. Examination revealed trauma to the back and whiplash injury to the neck. Dr. Tobin suggested the plaintiff see an orthopedic surgeon. Given the fact that the plaintiff appears to be developing a phobia against travel due to this train crash and other prior accidents, including an airplane crash and auto accident, Dr. Tobin felt psychological counseling would benefit him.

On February 16, 2001, Mr. Hainsworth presented to Christopher Macadam, D.C. of Connaughty Chiropractic Center. Dr. Macadam prescribed a course of chiropractic therapy which consisted of modalities applied to the neck and lower back.

Over the course of the next 12 months, Mr. Hainsworth was seen by Dr. Macadam for a total of 35 visits.

On March 12, 2001, Mr. Hainsworth presented to David Johnson, Ph.D. of the Post Traumatic Stress Center for an initial meeting regarding his phobia of traveling. It was Dr. Johnson's impression that the plaintiff was suffering from acute post-traumatic stress disorder due to the train accident.

Over the course of the next 4 months, Mr. Hainsworth was seen by Dr. Johnson for a total of 8 visits.

The plaintiff was discharged from counseling on July 12, 2001 as the treatment successfully reduced the symptoms to manageable levels, allowing him to continue his work. Dr. Johnson felt the sub-clinical level of post-traumatic stress disorder symptoms would remain; however, that will continue permanently to be potentially activated by other traumatic events, particularly those that remind him of the accident.

On March 27, 2001, the plaintiff presented to Dr. Stephen Gross of Ninigret Orthopedics with continued complaints of numbness and tingling in both hands and both lower extremities and feet. He also expressed concern in that he felt he could not rely on public transportation. Examination of the cervical spine revealed diminished range of motion in all planes. Range of motion of the lumbar spine was limited by discomfort. X-rays of the cervical spine showed straightening and mild degenerative changes. Dr. Gross' assessment was cervical strain with a question of central lumbar herniated disc and post traumatic stress disorder. He referred the plaintiff for an EMG and NCS of his lower extremity and an MRI of his cervical spine. He prescribed Vioxx and would see him back after the studies were completed.

The plaintiff returned to Dr. Gross on May 16, 2001 for the results of the EMG, NCS and MRI studies. The MRI revealed degenerative changes at the levels from 3/4 to 6/7 and disc bulging at C5/6 and C6/7. The EMG and nerve conduction studies showed decreased motor units in two muscles in the right lower extremity. Dr. Gross' assessment continued to be cervical and lumbar strains. Dr. Gross advised the plaintiff to continue his chiropractic care and would see him back in about 2 months.

On July 30, 2001, the plaintiff returned to Dr. Gross for a follow-up. He noted that he was still bothered by flare ups of pain and has problems with activities around the house and at work, particularly with long travel and is still requiring chiropractic care. Examination revealed continued discomfort with paraspinal muscle palpation and slight rigidity and spasm noted both in the cervical and lumbar paraspinal muscles.

In his recheck with Dr. Gross of October 29, 2001, the plaintiff reported stiffness, discomfort I both trapezius muscles, difficulty turning his head from side to side and occasional headaches. He continued to report low back pain with travel and activities. Dr. Gross' examination of the plaintiff's cervical spine revealed limited range of motion in all planes and tender, tight trapezius muscles with increased resting tone. The low back exam revealed pain the S-1 joints bilaterally

and also discomfort and increased tone in both paraspinal lumbar muscles.

On February 2, 2002, the plaintiff presented to Dr. Gross for a final evaluation of his injuries. Dr. Gross assigned a 14% permanent partial impairment to the cervical spine and a 7% permanent partial impairment to the lumbar spine as a result of the injuries sustained in the January 17, 2001 train accident.

The plaintiff intends to prove that the defendant, Amtrak, was negligent in that it:

(a)     knew, or in the exercise of reasonable care should have known, that a dangerous obstruction existed on the tracks, where it was a hazard to commuter trains and their passengers;

(b)     failed to properly inspect and maintain the railway, tracks and rail bed to discover its unsafe condition;

(c)     failed to maintain the tracks in a reasonably safe condition and free of obstructions;

(d)     failed to inspect the tracks to discover or remedy the dangerous condition of the tracks;

(e)     failed to remove potential hazards from the railway, tracks and rail bed, in particular the large rock(s) which could derail the trains;

(f)     failed to inspect surrounding areas for potential hazards to railway, tracks and rail bed;

(g)     failed to remove potential hazards from the surrounding areas, in particular large rocks that could loosen, slide or fall onto the tracks;

(h)     failed to take any remedial steps and or measures so as to make said railway, tracks and rail bed reasonably safe for passenger trains;

(i)     failed to warn the public, including the plaintiff, that the rails were dangerous;

(j)     failed to warn the plaintiff and other passengers of the impending collision;

(k)     failed to fence or otherwise secure said rail bed from vandalism or other dangerous conditions such as rocks falling, rolling or otherwise being placed onto the said track;

(l)     designed or constructed said tracks at or near a hazardous area, subject to rock slides without protecting against the risk of obstructions making their way onto the tracks;

(m)     operated said train at an excessive speed for the surrounding territory;

(n) failed to bring said track in compliance, to halt operations over said track, or to operate under authority of a person designated under 49 CFR § 213.7(a) in violation of 49 CFR § 213.5;

(o) failed to provide a locomotive and qualified engineer and brakeman at the front of the train, where hazards such as the large rock could be seen by those operating the locomotive;

(p) failed to provide a hazard detection system to warn the train and its operators of hazards on the tracks;

(q) designate qualified persons to supervise restorations and renewals and inspect said track in violation of 49 CFR § 213.7;

(r) failed to inspect said track in violation of 49 CFR § 213.233;

(s) failed to make a special inspection of said track in violation of 49 CFR § 213.239;

(t) failed to keep and maintain a record of each inspection required to be performed on said track in violation of 49 CFR § 213.241;

(u) failed to equip and maintain an efficient hand brake which operates in harmony with the power brake thereon in violation of 49 CFR § 231.12;

(v) failed to maintain a responsive train brake system in violation of 49 CFR § 238.231;

(w) failed to equip said train with hand brakes that meet the requirements of 49 CFR § 231 in violation of 49 CFR § 238.231;

(x) failed to equip or maintain safe interior fittings and surfaces in violation of 49 CFR § 238.233;

(y) failed to inspect, test and maintain passenger equipment in violation of 49 CFR § 238.305;

(z) failed to periodically clean, repair, and test brake equipment in violation of 49 CFR § 238.309;

(aa) failed to provide and maintain a means of emergency communication throughout the train in violation of 49 CFR § 238.437;

(bb) failed to adopt and comply with a written emergency preparedness plan in violation of 49 CFR § 239.101;

(cc) failed to conduct full-scale emergency simulations in order to determine its capability to execute the emergency preparedness plan in violation of 49 CFR § 239.103;

(dd)    failed to conduct operational efficiency tests of its on-board and control center employees to determine the extent of compliance with its emergency preparedness plan in violation of 49 CFR § 239.301;

(ee)    failed to implement and conduct a proper written program for certifying the qualifications of locomotive engineers in violation of 49 CFR §240.101;

(ff)    failed to provide adequate continuing education for its engineers and other employees in violation of 49 CFR §240.124.

As a result of the negligence of the defendant, the plaintiff suffered severe, permanent and disabling physical and emotional injuries.  He will no longer be able to engage in many of the activities which he engaged prior to the incident, such as engaging in various sporting activities with his daughter.  He cannot sit or stand for long periods, which affect his ability to work.  The plaintiff also suffers an increased risk of future harm and trauma and accompanying fear and anxiety in that regard.

**7.    DEFENDANT'S CONTENTIONS**

Amtrak admits that a boulder fouled the track on the day of this unfortunate and unique incident.  However, Amtrak denies that it was negligent as the dangerous condition was not reasonably foreseeable.  The evidence unequivocally shows that there were no prior similar incidents whereby a large boulder of this magnitude fouled the tracks. Prior to the subject incident, Amtrak never experienced a large boulder obstructing its tracks as the result of a rock-fall along the Northeast Corridor.  Plaintiff has not developed any evidence suggesting otherwise.  Therefore, Amtrak did not have actual or constructive notice of any dangerous condition.

Even if plaintiff somehow proves liability, his damages are minuscule.  The Yale-New Haven Emergency Room diagnosed plaintiff with mere muscular strain on the day of the incident.  Plaintiff's own orthopedist who performed plaintiff's prior back surgery in 2000, Dr. Michael Halperin, examined post-accident x-rays and plaintiff on January 24, 2001 and concluded that there was "no significant injury other than a moderate sprain/strain" as a result of the subject incident.

Plaintiff stipulated in a Request for Admissions that he has not incurred any diminution of past or future wages, salary or earning capacity as a result of the incident.  Amtrak also claims that plaintiff had a severe pre-existing back condition for twenty years preceding the incident which required surgery in January 2000.  Plaintiff underwent a lumbosacral disc excision (for L4-5 spondylolisthesis with herniated disk and dynamic instability) and fusion in January 2000. His injuries are therefore merely limited to soft-tissue cervical and lumbar strain which have resolved.

In fact, plaintiff has not sought any medical or therapeutic treatment since 2002.   Plaintiff's alleged post traumatic stress disorder (i.e., fear of travel) was pre-existing after having been involved in a airplane crash in 1981 and a motor vehicle roll-over incident in 1996.

Dr. James Donaldson, a neurologist with the University of Connecticut, performed an IME of the plaintiff on September 8, 2003. Dr. Donaldson concluded: "Certainly he had soft tissue injuries, most notable a large bruise on his right back and flank. However, his lumbar fusion remained stable and there was no acute bony injury of his cervical spine although he did have degenerative changes in his neck which would have predated the accident and did not effect either the spinal cord or nerve roots. Furthermore, his neurological examinations have been normal." Dr. Donaldson opines that plaintiff had self limited, soft tissue injuries. The train wreck of January 17, 2001 *did not increase* any impairment Mr. Hainsworth had of either his neck or low back. He can be expected to have lumbago due to his previous condition and at his weight. Dr. Donaldson does not believe that Mr. Hainsworth developed a post concussion syndrome and does not suffer any traumatic brain injury. It is also Dr. Donaldson's opinion that Mr. Hainsworth did not develop post traumatic stress disorder.

Plaintiff's medical expenses were paid by his employers' workers' compensation carrier, Zurich American Insurance Company, which has notified Amtrak and plaintiff of its right to assert a lien on any recovery by plaintiff.

**8.    LEGAL ISSUES**

Under Connecticut law, the plaintiff bears the burden of proving defendant's actual or constrictive notice of a defect or dangerous condition and, "in the absence of such evidence, [the court] cannot permit a jury to reach such a conclusion on the basis of either speculation or conjecture." Colombo v. Stop and Shop Supermarket Co., Inc., 67 Conn. App. 62, 64, 787 A.2d 5, 6 (2001). "For the case to go the jury, there must be sufficient evidence of the defendant's negligence to remove that issue from the field of surmise and conjecture and to support a verdict." Peters v. Billick, 147 Conn. 699, 702, 166 A.2d 146, 147 (1960); Ferri v. Smith, 151 Conn. 481, 484, 199 A.2d 331 (1964).

**9.    VOIR DIRE QUESTIONS**

    A.    Plaintiff's Proposed questions to be submitted to the jury panel:

1.    This trial is scheduled to start on May 18, 2004, and last approximately 8 days. Do you have a scheduling conflict that would prevent you from serving on a jury?
2.    Are you married, single, or divorced? Do you have children?
3.    What is your occupation? What are the occupations of the members of your immediate family?
4.    What do you do in your spare time? What are your hobbies? What about your spouse?

5.    Have you or any member of your family ever worked in the field of claims adjustment for an insurance company?
6.    Do you know the plaintiff or his wife?
7.    Do you know anything about the defendant corporation? Have you, or any member of your family or a close friend ever worked for this company? If so, what do you know about the company?

8.   Have you or any member or your family ever been a party to a lawsuit or a personal injury claim, whether or not suit has been brought? If so, please explain.
9.   Have you ever served as a juror before or sat through a trial? If so, please explain how you found the experience.
10.  Have you or any member of your family ever been injured in an accident?
11.  Have you or any member of your family been injured in an accident involving a train?

12.  Have you or any member of your family ever suffered from a cervical or lumbar sprain as a result of an accident? If so, please describe.
13.  Do you or any member of your family travel for business purposes?
14.  Have you ever made a claim against someone as the result of an accident?
15.  How do you feel about our system of justice in which people can seek money for their injuries and damages?
16.  Do you believe jury verdicts are generally too high or too low?
17.  Do you have any family members or friends who are doctors? If so, please explain.
18.  Do you consider yourself to be a sympathetic person?

19.  At the end of the case, if the evidence shows that the plaintiff was injured and that another person or persons or a corporation caused the plaintiff's injuries and damages due to negligence, do you know of any reason that you may find it difficult to award the plaintiff fair, just and reasonable money damages to fully compensate him for all of his injuries and losses? Is there any reason who you could not award the plaintiff money under those circumstances?
20.  Have you studied law, either formally or informally? If so, do you believe you are familiar with the laws applied in cases such as this? Could you explain the extent of your knowledge? Can you assure us you would put aside your knowledge of the law and only apply the law given to you by the judge?

21.  There are two types of damages, economic damages, such as medical bills and lost wages, and noneconomic damages such as pain and suffering, disability, disfigurement, and loss of enjoyment and quality of one's life. If you were asked to put a value on something that is hard to measure, such as pain and suffering, would you be able to do it if appropriate?
22.  Have you read or heard in the media or otherwise of any criticism of a civil jury system in personal injury cases? What have you heard and how, if at all, has it affected you?
23.  How do you feel about a person like K. Paul Hainsworth hiring an attorney and bringing a lawsuit?
24.  Do you believe our civil jury system is a good system, or do you think it is in need of reform? If you believe in reforming it, how so?

25.  In a civil case such as this, the standard for the burden of proof is the fair preponderance of the evidence, or more likely than not. The standard is not beyond a reasonable doubt, which is a much heavier burden. That is the standard in a criminal case. How do you feel about working with the preponderance of the evidence standard? Can you assure us you would not expect the plaintiff to prove his case beyond a reasonable doubt and that you would only require proof by a preponderance of the evidence?
26.  Do you understand that for the defendant's special defenses, the defendant has the burden

of proof? Would you require the defendant to prove its special defenses by the same burden?
27.     Do you know of any reason that you could not award fair damages for pain and suffering if the evidence supported such an award?  How about disfigurement?  How about physical impairment or disability?  Or diminution in the quality of life due to an injury?
28.     At the end of the case, the judge will tell you what the law is and how it applies to this case.  Could you follow his instructions even if you disagree?
29.     Can you listen only to the evidence presented in court and decide the case based only on that information?

30.     After hearing the evidence and the law as given to you by the Judge, you conclude that the defendant is liable and then you arrive at a sum to be awarded which you are satisfied is fair, just and reasonable, but the amount surprises you, would you still award that amount, knowing it was fair?
31.     Are you the type of person who would be influenced by what other people might think of your verdict, or are you the type that can make your decision honestly based on the evidence and the law, without concern for the opinions of others outside of the jury?
32.  Is there any reason that has come to your mind why you believe you may not be fair or impartial in this case?

       Defendant's Proposed Voir Dire (to be added):

1. Do any of you know the witnesses in this case, (Read witness list).  Do you know anyone who works for Amtrak?
2. Do any of you know anyone who has ever been represented by the plaintiff's attorneys, The Reardon Law Firm?  How about the defendant's attorney Brian Molinari?
3. Have any of your families or close friends ever been injured while traveling?  If so, please explain what happened?  Was a report filed?  Claim made?  Medical care required?  Do you feel that you (or the injured party) were treated fairly?  By the Court (if a trial followed)?
4. Have any of you been treated by an orthopedist or psychiatrist?  For what condition?  For how long were you treated?  Have any of you ever injured your back or neck?
5. Have any of you or any member of your family or close friends been involved in any way with Amtrak?  Do any of you have any bad or negative feelings against Amtrak?
6. Throughout this trial, plaintiff will always get to do things first.  The defendant cannot proceed until the plaintiff has finished.  Will each of you wait until you have heard all the evidence before you make up your minds about any issue?
7. Will you give equal weight to answers given during defendant's questioning of plaintiff and plaintiff's witnesses as to evidence obtained by plaintiff's attorney from his witnesses?
8. Will you be able to follow the laws as instructed by me in this case?
9. Plaintiff is suing the railroad because of an injury which he alleges he suffered while he was traveling on an Amtrak-operated train and for which he claims Amtrak is responsible.  Do any of you feel that Mr. Hainsworth should recover money from Amtrak solely because he was injured even if Amtrak was not responsible for the injury?
10. Would you be able to find that Mr. Hainsworth should not be compensated if the law as

     instructed to you and the facts before you required that you make such a finding?
11. If any of you cannot in good conscience promise that you have no doubts that you will treat both sides fairly and equally, please raise your hand.
12. As our judicial system requires, can you treat Amtrak, as an individual with an equal right to a fair trial as any other individual?
13. Have any of you had any legal training? Have any of you ever served on a jury before? If so, what type of case was it? Did you reach a verdict? Was the experience of serving as a juror pleasant or unpleasant?
14. Will you apply the laws as instructed by me in this case rather than any prior understanding that you may have had as to what the law is?
15. Do each of you understand that it is solely the evidence, not the number of witnesses called by each side, or the amount of time taken by either side to present its case, on which you must base your decision?
16. Is there anything in your mind that you feel I, or either side should know that would affect your ability to fairly and impartially decide this case on the merits?
17. Where do you work? For how long? (If less than 10 years - what did you do before that?)
18. What is your present position?
19. What are your job duties?
20. Are you married? For how long? Children?
21. Where does your spouse work? For how long? Children work? Where? How long?
22. What are your spouse's employment duties?
23. Do you understand that in order to award damages to the plaintiff against Amtrak, plaintiff must prove first that Amtrak is liable to him? Do any of you not understand or disagree with the legal principle that plaintiff has the burden of proving his claims against the defendant in this case.
24. Do you understand that plaintiff must also prove that he has suffered damages due to Amtrak's conduct, before you may award damages to the plaintiff?
25. Do you feel you can give all sides a fair and impartial trial and render a just verdict among them.

**10.    LIST OF WITNESSES**

    A.    <u>Plaintiff's Witnesses</u>

1.    K. Paul Hainsworth, P.O. Box 546, 127-6 Joshua Town Road, Lyme, Connecticut 06371, will testify to the facts of the incident and his damages.

2.    A representative of Amtrak, 50 Union Avenue, 4th Floor West, New Haven, Connecticut, will testify to the facts of the incident.

3.    A representative of Connecticut Department of Transportation, Bureau of Pubic Transportation, 2800 Berlin Turnpike, Newington, Connecticut 06131, will testify to the facts of the incident.

4.      A representative of Branford Fire Department Ambulance, 45 North Main Street, Branford, Connecticut 06405, will testify regarding the injuries suffered by the plaintiff, diagnosis, prognosis, physical examination and treatment of the plaintiff in said accident, which included injury to his lumbar spine.

5.      Dr. Paul Krochmal, M.D., of Yale New Haven Hospital, 20 York Street, New Haven, CT 06504, will testify regarding the injuries, diagnosis, prognosis, treatment, impairment and disability sustained by the plaintiff in said accident, including a lumbar sprain.

6.      Dr. Michael Halperin, Norwich Orthopedic Group, 2 Clinic Drive, Norwich, CT 06360, will testify as to the injuries, diagnosis, prognosis, treatment, impairment and disability sustained by the plaintiff in said accident, which included cervical and lumbar sprains.

7.      Dr. Christopher Macadam, D.C., Connaughty Chiropractic Center, 142 Boston Post Road, Old Saybrook, CT 06475, will testify as to the injuries, diagnosis, prognosis, treatment, impairment and disability sustained by the plaintiff in said accident, which included cervicobrachial syndrome, sciatic neuralgia and cervical and lumbar sprains.

8.      Stephen B. Gross, M.D., Ninigret Orthopedics, 35 Wells Street, Westerly, RI 02891, will testify as to the injuries, diagnosis, prognosis, treatment, permanent impairment and disability sustained by the plaintiff in said accident, which included cervical and lumbar sprains. Dr. Gross will further testify that the plaintiff has a permanent partial impairment of his cervical and lumbar spines.

9.      Daniel C. Diffin, M.D., Westerly Hospital Radiology, 25 Wells Street, Westerly, RI 02891, will testify as to the injuries, diagnosis, and prognosis sustained by the plaintiff in said accident, including degenerative changes at C3-4 through C6-7 with disc bulging at C5-6 and C6-7.

10.     Dr. Gerard Lawrence, M.D., Concentra Medical Examinations, 750 Old Main Street, Suite 202, Rocky Hill, CT 06067, will testify regarding his independent medical examination and evaluation of the plaintiff regarding the plaintiff's cervical and lumbar spine injuries, diagnosis, prognosis, permanent impairment and disability sustained by the plaintiff in said accident. Dr. Lawrence will also testify that the plaintiff has a permanent partial impairment of the cervical spine. Dr. Lawrence will further testify in accordance with his medical records.

11.     David Johnson, Ph.D., of the Post Traumatic Stress Center, 19 Edwards Street, New Haven, CT 06511. Dr. Johnson will testify as to his/her findings regarding the plaintiff's emotional and psychological condition, including post-traumatic stress disorder, as a result of the January 17, 2001 train accident.

12.     Don H. Bowden, Sr., Bowden's Railroad Services, Inc., 2010 U.S. Highway 278 S.E., P.O. Box 1496, Social Circle, GA 30025, will testify as to how the accident was caused by the operation of the defendant Railroad; the conduct of the defendant with regard to track inspection procedures, the controls and procedures in place on the date of subject collision; the failure to timely install wire mesh in the area; the weather conditions and the track inspection procedures

and practices in place. He will render his opinions how each substantially contributed to the collision and that the track inspection procedures Amtrak used were a deviation from the standard of care in the industry. He will further render his opinions regarding track inspection for the time of year, as well as visibility, signage, vegetation, rock formation, foreign objects, traffic controls and other related factors.

13.     Robert A. Hayes, C.P.G., Geoforensics, Inc., 1240 Sherwood Road, Williamston, MI 48895, will testify as to rock formations, soil, vegetation and erosion of the terrain in the area of MP 85.2. He will testify regarding rock stability and mitigation procedures. He will further testify regarding the nature and cause of deterioration of the soil at the accident site.
14. The following witnesses will testify regarding the plaintiff's injuries and/or damages:
(a) damage witness . . ., CT

      B.     Defendant's Witnesses

1.     George Fitter, Amtrak Deputy Division Engineer, will testify as to Amtrak's maintenance and construction activities and other engineering aspects for track safety for the New England division; training of employees; track inspections; federal code compliance; and history (and lack thereof) of track-fouling objects along the Northeast Corridor, New England Shoreline.

2.     Jack Harrington, Amtrak Engineer, will testify as to the facts and circumstances of the incident.

3.     William Richetelli, Amtrak Conductor, will testify as to the facts and circumstances of the incident.

4.     Lynda McKiernan, Amtrak Ass't Conductor, will testify as to the facts and circumstances of the incident.

5.     Dr. Michael Halperin, Norwich Orthopedic Group, 2 Clinic Drive, Norwich, CT 06360, will testify as to plaintiff's pre-existing back conditions and the extent of alleged injuries sustained by the plaintiff in said accident.

6.     Dr. James Donaldson, Neurologist, University of Connecticut, will testify as to his conclusions as a result of an examination of the plaintiff on September 8, 2003, as well as his analysis of plaintiff's medical, hospital, therapy, and other treatment records, reports, and diagnostic imaging. Dr. Donaldson will testify that plaintiff's injuries from the alleged incident were limited to soft tissue injuries.

**11.   EXHIBITS**

      A.   Plaintiff's Trial Exhibits

(a)   Incident Report;

(b)   Medical Records and Reports of the plaintiff from:
Norwich Orthopedic Group;
Connaughty Chiropractic Center;
Timothy Tobin, M.D., Essex Medical Group;
Stephen B. Gross, M.D., Ninigret Orthopedics;
Yale-New Haven Hospital;
Westerly Hospital;
Post Traumatic Stress Center;
Gerard Lawrence, M.D.;
Branford Fire Department Ambulance;

(c)   Medical bills;

(d)   Diagrams of accident site;

(e)   Photos of the rock slopes;

(f)   Anatomical models, drawings and diagrams;

(g)   Stipulation of life expectancy;

(h)   X-ray and diagnostic films;

(i)   Plaintiff's Tax returns, payroll records and employment records;

(j)   The deposition of plaintiff, K. Paul Hainsworth;

(k)   The deposition of George Fitter;

(l)   The deposition of John Harrington;

(m)   The deposition of William Richetelli;

(n)   The deposition of Linda McKiernan;

(o)   The deposition of Lynda Pantalena;

(p)   The deposition of Jimmy Ko;

(q)     Defendant's responses to plaintiff's request for interrogatories and production.

        B.     <u>Defendant's Trial Exhibits</u>

(1)     Plaintiff's Response to Request for Admissions dated October 3, 2003.
(2)     Dr. James Donaldson's Written Report regarding his September 8, 2003 Examination.
(3)     Plaintiff's Interrogatory Responses.
(4)     Yale-New Haven Hospital Records.
(5)     January 24, 2001 Records of Dr. Michael Halperin.
(6)     Records of Dr. Michael Halperin re: plaintiff's prior back surgery.
(7)     Amtrak MW-1000 Book of Rules.

**12.    DEPOSITION TESTIMONY**

No witnesses will testify through the use of deposition testimony.

**13.    REQUESTS FOR JURY INSTRUCTIONS**

To Be Submitted Separately.

**14.    ANTICIPATED EVIDENTIARY PROBLEMS**

Amtrak objects to admissibility and relevance of evidence of subsequent remedial measures as it does not contest ownership or control.

**15.    PROPOSED FINDINGS AND CONCLUSIONS**

To be submitted prior to trial.

**16.    TRIAL TIME**

This matter will take approximately 6-8 trial days exclusive of jury selection.

**17.    FURTHER PROCEEDINGS**

Motions in limine.

**18.    ELECTION FOR TRIAL BY MAGISTRATE**

The parties do <u>not</u> agree this case may be tried by a United States Magistrate.

THE PLAINTIFF

By_____
Robert I. Reardon, Jr.
Federal Bar No. CT05358
Jennifer L. Booker
Federal Bar No. CT23657
THE REARDON LAW FIRM, P.C.
160 Hempstead Street
New London, CT 06320
(860) 442-0444
His Attorneys


THE DEFENDANT
NATIONAL RAILROAD PASSENGER
CORPORATION (AMTRAK)

By_____
Brian Molinari (ct 21294)
Landman Corsi Ballaine & Ford, P.C.
120 Broadway, 27th Floor
New York, NY 10271
(212)238-4800
Its Attorneys


## CERTIFICATION

I hereby certify that a copy of the above was e-mailed and faxed on May 3, 2004 to all counsel and pro se parties of record listed below:

To:   Robert I. Reardon, Jr.
      Jennifer L. Booker
      THE REARDON LAW FIRM, P.C.
      160 Hempstead Street
      New London, CT 06320

_____
Brian M. Molinari